IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Criminal Action No. 10-56-SLR |
| | ) | |
| HONG MENG, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF PLEA AGREEMENT

Pursuant to discussions between the United States of America, by and through its attorneys, David C. Weiss, United States Attorney for the District of Delaware, and Robert F. Kravetz, Assistant United States Attorney, and the defendant, Hong Meng, by and through his attorneys, Kathleen M. Jennings, Esquire, and Joseph Bernstein, Esq., the following agreement is hereby entered into by the respective parties:

1. The defendant shall waive indictment and plead guilty in the United States District Court for the District of Delaware to a one-count Information. Count One charges the defendant with theft of a trade secret, in violation of Title 18, United States Code, Section 1832. The maximum penalty for the charge is 10 years imprisonment, a $250,000.00 fine, or both; three years supervised release; and a $100.00 special assessment.

2. The defendant understands that if there were a trial, the government would have to prove the following elements with respect to Count One: (1) the defendant misappropriated or possessed some information; (2) the defendant knew or believed that the information was a trade secret; (3) the information was in fact a trade secret; (4) the defendant intended to convert the trade secret to the economic benefit of anyone other than the owner; (5) the defendant knew to a practical

certainty that the owner would be injured; and (6) the trade secret related to a product that is produced for or placed in interstate or foreign commerce.

    3.    In connection with this Memorandum, the defendant admits the following:

    a.    Defendant is a citizen of the Republic of China and has been a lawful permanent resident of the United States since October 2004. In 1995, defendant received a masters degree from Peking University ("PKU"), located in Beijing, China. Defendant received a Ph.D from the University of California at Los Angeles in 2002.

    b.    Defendant was formerly employed as a Senior Research Chemist by E.I. duPont de Nemours Corporation ("DuPont USA"), a multinational corporation that creates and markets a wide-variety of products that are placed in interstate and foreign commerce. During his tenure at DuPont USA, defendant was involved in research in the field of Organic Light Emitting Diodes ("OLED"), and specifically the organic synthesis of molecules used in OLED technology. OLED is a technology that represents the next generation of display and lighting applications. Over the years, DuPont USA has spent several million dollars in research and development of OLED technology.

    c.    In Spring 2009, while still employed by DuPont USA and without company permission, defendant accepted a position as a faculty member at PKU's College of Engineering, Department of Nanotechnology. PKU, like similar research universities worldwide, seeks to commercialize scientific breakthroughs made by students and faculty. After defendant accepted employment with PKU, he hired an assistant and graduate student; received office space, lab space, and an email address; was listed as a faculty member on the PKU website; and gave a presentation to a regional Chinese government soliciting funding to commercialize his OLED research at PKU. Defendant failed to inform DuPont USA about his actions. The defendant contends that he did not receive a salary from PKU.

  d. In early 2009, DuPont USA's OLED research efforts resulted in the development of a breakthrough chemical process that increased the performance and longevity of OLED displays. This breakthrough represented the culmination of approximately seven years of research by DuPont USA scientists, and the company expended extensive research and development costs in its efforts. The chemical process, which was referred to within DuPont USA as "Gen III," was considered to be a "trade secret" by DuPont USA, which undertook several measures to protect it. OLED team members were instructed to refer to the process generically as "Gen III," rather than by the specific chemical compounds used in the process; the process itself was kept on a secure database which was password protected; and access to the database was granted only to select OLED team members, including the defendant, or at the discretion of OLED team management. Defendant was aware of these security measures and was aware that the Gen III process was a DuPont USA trade secret.

  e. On July 30, 2009, defendant emailed a Microsoft Word document to his PKU email account which contained, embedded on the second page, the protected chemical process. In addition, in August 2009, defendant downloaded the same Word document from his DuPont work computer to a thumb drive, which he subsequently uploaded to his personal computer. The defendant knew to a practical certainty that his conduct in misappropriating the chemical process would injure DuPont.

  f. In August 2009, defendant mailed a package containing 109 "samples" of intermediate chemical compounds used in organic electronics to a colleague at Northwestern University and instructed his colleague to forward the materials to defendant's office at PKU. Eight of the 109 samples were trade secret chemical compounds whose structures had not been publicly disclosed by DuPont. The samples had been stored in defendant's laboratory at the DuPont Experimental Station in Wilmington. The chemical compositions of these samples were recorded in

defendant's DuPont laboratory notebook, which was stamped "confidential." The defendant was aware that the information in his lab notebook, as well as the resulting compounds, were DuPont trade secrets.

      g.      The defendant agreed to meet with the government on three occasions for interviews. During the course of the interviews, the defendant willfully made false statements to the Federal Bureau of Investigation (FBI) with respect to a material matter. That is, the defendant willfully denied that he had sent the sample compounds to his colleague at Northwestern with instructions for the compounds to be shipped to China, when he knew that such statement was false.

      4.      The government has no affirmative evidence that defendant transmitted the chemical process beyond its initial transfer, via email, to his PKU email account on the PKU computer server.

      5.      The parties agree that, in this case, the amount of loss for purposes of U.S.S.G. § 2B1.1 should be determined based on the amount of out-of-pocket losses incurred by DuPont resulting from DuPont's response to the defendant's theft of trade secrets. The parties stipulate that the total amount of loss so calculated is $58,621.52. The defendant understands and agrees that, based upon a loss amount of at least $30,000.00 but less than $70,000.00, the defendant is subject to an offense level of 12 under U.S.S.G. § 2B1.1(a)(2) and (b)(1)(D).

      6.      The parties further stipulate that defendant obstructed justice during the course of the government's investigation by making the material misstatement set forth in paragraph 3g during interviews with government agents. The defendant understands and agrees that such conduct subjects him to a two-level increase in his advisory Guidelines range under U.S.S.G. § 3C1.1. By virtue of the defendant's guilty plea and this stipulation, the government agrees not to charge

defendant separately with the additional offense of willfully making a false statement, in violation of Title 18, United States Code, Section 1001.

7. Provided that the United States does not learn after the entry of the defendant's guilty plea of conduct by the defendant that is inconsistent with acceptance of responsibility, the United States agrees to recommend a two-level reduction in the defendant's Sentencing Guidelines range pursuant to U.S.S.G. § 3E1.1. If defendant's offense level is 16 or greater, the United States agrees to recommend an additional one-level reduction in defendant's Sentencing Guidelines range pursuant to U.S.S.G. § 3E1.1(b).

8. The defendant understands that the District Court must consider the United States Sentencing Guidelines and the factors set forth in Title 18, United States Code, Section 3553(a) in determining an appropriate sentence. At this stage (prior to the Presentence Investigation Report), the defendant should expect that the government will recommend that the Court impose a sentence consistent with the sentencing range set forth by the United States Sentencing Guidelines. The defendant understands, however, that the ultimate determination of an appropriate sentence will be up to the sentencing judge. The Court may impose a sentence which exceeds, falls below, or is contained within the sentencing range prescribed by the Sentencing Guidelines. The defendant expressly acknowledges that if the Court imposes a sentence outside the range set forth in the sentencing guidelines, or otherwise different than the defendant expected, or contrary to the recommendation of his attorney or the United States, the defendant will not be allowed to withdraw his guilty plea on that basis. *RFK* *KS*

9. The defendant agrees to pay the $100 ~~$200~~ special assessment at the time of sentencing. *H*

5

Should he fail to do so, the defendant agrees to enter voluntarily into the United States Bureau of Prisons' administered program known as the Inmate Financial Responsibility Program, through which the Bureau of Prisons will collect a portion of the defendant's prison salary and apply it on the defendant's behalf to the payment of the outstanding debt ordered.

10. The defendant knows that he has, and voluntarily and expressly waives, the right to file any appeal, any collateral attack, or any other writ or motion after sentencing – including, but not limited to, an appeal under 18 U.S.C. § 3742 or 28 U.S.C. § 1291, or a motion under 28 U.S.C. §2255 – except that the defendant reserves his right to appeal only if (1) the government appeals from the sentence; (2) the defendant's sentence exceeds the statutory maximum for the offense set forth in the United States Code; (3) the District Court applies a two-level increase in defendant's Guidelines offense level for an abuse of position of trust, pursuant to U.S.S.G. § 3B1.3; (4) the sentence unreasonably exceeds the Sentencing Guidelines range determined by the District Court in applying the United States Sentencing Guidelines; and (5) the defendant claims that his attorney(s) were ineffective under Strickland v. Washington, 466 U.S. 688 (1984) in representing the defendant.

11. The United States Attorney reserves the right to defend any ruling of the District Court should there be an appeal from this case.

12. By entering into this agreement, the defendant acknowledges that he has discussed with counsel the consequences that his guilty plea may have on his immigration status. The defendant understands that as a result of his criminal conviction he may be subject to removal from the United States by the United States Department of Homeland Security, Immigration and Customs

Enforcement. The defendant expressly acknowledges that if he is ordered removed from the United States, he will not be allowed to withdraw his guilty plea on that basis.

13. It is further agreed by the undersigned parties that this Memorandum supersedes all prior promises, representations, and statements of the parties; that this Memorandum may be modified only in a written document signed by all the parties; and, that any and all promises, representations, and statements made prior to or after this Memorandum are null and void and have no effect whatsoever.

_____
Kathleen M. Jennings, Esq.
Attorney for Defendant

_____
Hong Meng
Defendant

Dated: June 8, 2010

DAVID C. WEISS
United States Attorney

_____
By: Robert F. Kravetz
Assistant United States Attorney

AND NOW, this __8th__ day of __June__ 2010, the foregoing Memorandum of Plea Agreement is hereby (accepted) (rejected) by this Court.

_____
Hon. Sue L. Robinson
United States District Judge